Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Mark Ayala. I'm here on behalf of appellants. In this action, appellants bring four claims under Nevada state law, defamation per se, defamation, business disparagement, and tortious interference with prospective business advantage. Each of these claims arise generally out of defamatory remarks made by appellees while at a trade show in Nevada for the Nevada aviation market. With respect to this appeal in particular, two issues are presented to this Court. First, whether the lower court erred in concluding that it did not have specific jurisdiction over appellees. And second, whether the lower court erred in failing to consider whether this case should have been transferred to the District of Washington rather than being dismissed upon concluding it did not have jurisdiction. With respect to the issue of specific jurisdiction, the relevant standard is laid out in the data disk. It's a three-pronged standard. The first prong is that the non-resident must purposefully direct his activities or consummate some transaction with the former resident thereof or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum. Two, the claim must arise out of or relate to the defendant's forum-related activities. And three, the exercise of jurisdiction must be reasonable. Forgot to ask, if Your Honors don't mind, if I reserve two minutes for rebuttal. Sure. And did you get admitted to the bar? I did, yes. Congratulations. Thanks very much. I appreciate that. The first argument is personal jurisdiction. That's right. That's right. So before this hearing, the panel asked the parties to consider the Picard International case and its implications on this matter. We've done so. We think Picard International, while distinguishable on the issue of reasonableness, nevertheless sets out three principles that are helpful to our discussion today. The first principle, and I'm quoting, is that the commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements under data disk. The second principle, I'm quoting again, is that a tortious act standing alone can satisfy all three requirements under data disk if the act is aimed at a resident of the state or has effects in the state. And the third principle is that even if the informed intentional tort did not harm a forum resident or did not have effects in the forum, jurisdiction may still be proper under data disk if it would be reasonable. Your Honors, we've met the first two prongs of data disk here under the Picard International framework. We've alleged that appellees physically went to Nevada, and while in Nevada, at a Nevada trade show, committed an intentional tort of defamation. Counsel, with regard to the third prong, I'm looking at the district court's order. And the district court said that the defamatory statements at the trade show, or plaintiffs have failed to sufficiently allege that these statements caused them any harm in Nevada. What is your theory of harm that's alleged in the complaint? Yes, Your Honor. So the district court is correct that we did not link the Nevada defamation to any particular loss profit or any particular loss transaction. But the law recognizes that defamation itself gives rise to legally cognizable damages. It is the violation of the plaintiff's rights to not be defamed that gives rise to legally cognizable damages, whether it's ultimately proved to be worth damages in the form of $100 million or nominal damages, simply to correct the record that the defamation was a false statement about their business. So we've alleged harm in the market. And the form of that harm is? Yeah, I understand that. I mean, there's always a reputational harm when it comes to these sort of defamatory statements in the business context. The district court, though, identified something much more as to whether the complaint itself has articulated that theory of harm, such that the lawsuit should be litigated in Nevada versus elsewhere. Washington, for example, defendant's home state. So that's why I was asking you to focus on the harm that's articulated, whether by inference or by express representations in the complaint itself. And if it's not there, whether this is a case that, assuming that you prevail on this issue, that needs an amendment of the complaint. That's where I was going with my question. Understood, Your Honor. Thank you. So in the complaint, we allege that the appellees were discussing appellants with these third parties, Schetzova and Kolek. These third parties were considering retaining appellant services. These third parties were also participants in the Nevada aviation market by participating at a Nevada trade show for that market. By defaming appellants in the course of those conversations, the complaint shows that participants in the Nevada aviation market think less of our clients today than they did but for the defamation. In that way, the appellant's reputation in the Nevada aviation market has been harmed. So to the extent that someone was thinking about utilizing your services in Nevada, they now might think twice about it. That's the idea. Exactly right. So turning back to the Picard International issues and the third prong of DataDisk, for the reasons that we just discussed, we think we've alleged harm in the form, effects in the form. And under Picard International, that can be sufficient to satisfy the third requirement under DataDisk. And on that basis, we would have met all three prongs. But even beyond that, the third prong can also be met using the reasonableness factors that this Court typically applies, a seven-factor test with which the Court is familiar. And going through those factors, it is, of course, appellee's burden to show that it would be unreasonable for jurisdiction to be exerted by Nevada in this instance. We don't think they've met that burden. With respect to each factor. And that's important to you, that they have the burden. Is that important, significant in this case? It's important only if the Court doesn't conclude that the harm in the form is sufficient to meet the third prong of DataDisk and proceeds to the reasonableness factors. So here, with respect to the extent of purposeful jurisdiction, the allegations show that respondents voluntarily decided to go to this trade show in Nevada. And they went there for the purposes of developing their own commercial interests in terms of meeting potential clients in the aviation business. Does Nevada have a state defamation statute? A state defamation statute? If it does, we haven't brought our claims under that statute. I know you haven't, but I'm just wondering because certain statutes, I think California, for example, presume harm in the business context. We have alleged defamation per se. But we're not relying on a particular statute. With respect to the burden on defendant, Your Honor, Appelli's papers essentially amount to the notion that they perceive a significant burden from having to travel from Washington to Nevada to appear for hearings or litigate this case from time to time. We do not think that that rises to a sort of unique harm that rises to the constitutional level. These folks have said in their declaration that they travel worldwide to go to different trade shows all the time. So we don't perceive that as a significant burden. With respect to the other factors, Your Honors, we think Nevada has a strong interest in this dispute. The Ninth Circuit repeatedly has explained that a state has a special interest in exercising jurisdiction over those who have committed tortious acts within the state. We also think that Nevada represents a reasonable place for this dispute to be resolved where the witnesses and the facts are in different locations. And this is, in some ways, a midpoint between those people, a midpoint that's actually probably more convenient to the Appellees than it is to Appellants, being that we're located in Bermuda and Switzerland and the witnesses are elsewhere. Your Honors, I see I'm- I reserve the remainder of your time. Thanks very much. Thank you. Thank you. Good morning. May it please the Court, my name is Angela Ochoa and I represent the Appellees, Arrow Law Group, and John Schmidt. We do not believe the District Court erred when it dismissed plaintiff's case for lack of personal jurisdiction. It would not be fair to require the defendants, my clients, to defend themselves in Nevada where they are strangers. Additionally, at this time, we do not believe it would be in the best interest of justice to transfer this case rather than dismissing it. Because, at this point, it appears that the plaintiffs were interested in form shopping. The District Court didn't reach the question of transfer. That's correct. Could we reach it? I believe that even if the Court relied on the wrong grounds or the wrong reasoning, this Court has authority to affirm the dismissal because it was the right result under the case Jackson v. Southern California. The Court asked- I'm sorry, once you finish answering that question, I wondered if you could address Picard International and the fact that we've already set in this circuit that intentional tort that's committed in the forum state establishes the first two prongs of the test. Did I answer your question sufficiently? I'm sorry. Yes, you did. Thank you. So I'd like to address Picard as you asked. And I think that Picard is instructive because it looks at both the purposeful direction test and the purposeful availment test. And the purposeful direction test was important because in that case, the plaintiff asserted that the Kuwaiti company did an intentional act in California with harmful effects in California when they made false statements to the California company. That's basically the same allegation that's made here is that my client from Washington went to Nevada and made a defamatory statement, an intentional act, and there's no real allegation about harmful effects, but at least in Picard, we have some instruction. And Picard, they rejected the idea that the effects were actually in California. In Picard, the court said, although there were fraudulent statements made to the California company, those statements were actually aimed at the plaintiff who was a non-resident. So I believe that they rejected that purposeful direction analysis, but they did go into the purposeful availment test, which because the plaintiff alleged that the California company relied on those false statements that the court could thereafter feel comfortable in finding that the first two prongs of the purposeful availment test were met. In our case, there is no allegation that the witnesses in Nevada ever relied or ever believed any of the alleged false statements that my client made. So I think that's a distinction. And I think that in our case- What, they need to allege in order to plead a defamation cause of action? No, no, there's no allegation that in a defamation per se case. Indeed, there's no requirement for reliance. But there are other allegations about business torts and there are no allegations about that the clients or the witnesses in Nevada actually believed anything that my client stated. I think that could be a defense, but it's not something they need to plead. Okay, so if the court believes that the first two prongs of the purposeful availment test were met, I believe that we have met our burden to show that it would be unreasonable to have my clients defend themselves in Nevada. Also based on the car. Aren't there, I mean, we obviously were, this was a dismissal based on lack of jurisdiction of a complaint. So all we have is really the complaint. Right. And your client was in Nevada at some kind of trade show and it's alleged that they go there regularly for these trade shows, right? That's correct. That's in the allegations of the complaint. Right, so why from the allegations is it unreasonable to say, well, you go to Nevada all the time anyway for business, so why not defend Nevada? It's equidistant between, it's actually closer to Washington than Bermuda. Unless your client really wants to go to Bermuda or. Right, well, I don't think it's reasonable based on these facts. I think from looking at all of the facts in the different cases in the Ninth Circuit, you have to look at the actual facts in this case. And although it's pled that my clients regularly go to Nevada to seek marketing activities, to seek clients, that's not what happened in this case. They were basically baited to say, to give their opinions about the plaintiff. They were what, baited? Baited, baited. The plaintiff's complaint talks about how the same witnesses were first approaching my client from the Isle of Man and from Washington, and that when they went to Nevada, they said, don't you remember what you said in the Isle of Man? This is what you said about the plaintiffs. Did I answer your question? I'm sorry. Well, you're making it sound like this is a sham lawsuit when you use the word baited. You know, at this point, we have only the complaint to go off of, so we'll see as we go through the case. But as to the seven factors, we believe that it would be unreasonable for Nevada to exercise jurisdiction over this Washington company. The first factor is the extent of the defendant's purposeful interjection into the form states affair. In Picard, the court noted that because the harmful acts were aimed at the non-resident, the plaintiff, that the extent of the interjection was negligible, and that's what we have here. The second issue is the burden on the defendant. And yes, Kuwait to California is probably a lot farther than Washington to Nevada, so we concede that. The third factor is the extent of the conflict with the sovereignty of the defendant's state. Now, as we know from the complaint, the plaintiff alleges that my client said that if any broker takes part in back-to-back transactions, that that could be unlawful under Washington law. And so, as we go through the case, we foresee that there may be conflicts in the different interpretations of how you perceive Washington law. If it goes back to Nevada, there might be an issue of conflict there. The fourth interest, the fourth factor is the form state's interest in adjudicating this dispute. And we believe that there is absolutely no interest for Nevada to dispute, to adjudicate this dispute. This is essentially an issue between foreigners. And at the end of the day, I really don't see, as in Picar, the court said that the form state has no interest in policing activities of non-California licensed banks. Similarly, Nevada has no interest in policing activities of non-licensed attorneys in Nevada. I think the most compelling factor is the efficient judicial resolution of the controversy. In Picar, the court looked at where discovery was going to take place. And in Picar, the court noted that discovery would take place in everyone's place of location. In this case, no one is from the state of Nevada. If there's depositions, it'll be in whatever states they're from. Not even the subpoena powers can bring forward those witnesses that are alleged in the complaint. So I'd like to go to the last factor, which is the alternative form. In this case, there is an alternative form, and that's Washington. For the above reasons, we believe that the court should affirm the dismissal based on the principles of Picar and the cases we cited. All right, thank you, counsel. Thank you. Runners, I just have a couple of brief points in response. With respect to the issues of purposeful injection and the forum's interest, I think in the case of Picard, the contact with California there was incidental in the sense that Chase Bank, which is the bank that the defendant had contacted, was chosen by the plaintiff. So in other words, the decision to go to California in order to try to draw on the letter of credit was just a function of the plaintiff's decision to appoint Chase as its agent in that instance, not the case here. In this instance, the appellees saw a commercial opportunity to go to a Nevada trade show to build their business, decided to go to Nevada to participate in that market, purposefully injected themselves in that market. The second point with respect to the forum's interest in this suit, the Nevada Supreme Court has addressed this issue very clearly. It states that Nevada law should, sorry, this is the Firouz Abadi decision that we cited in our brief. Nevada law should afford some protection to the out-of-state residents, which Nevada hosts at trade shows in order to boost Nevada business. As petitioners argue, the state has an interest in protecting its visitors from commercial predation and in providing a forum for the resolution of disputes having their origin here. I think the Nevada Supreme Court has spoken. It has a strong interest in protecting folks who come to its state for purposes of trade shows. With respect to the alternative forum boards, just a quick point on that. That factor is only relevant where the other factors have shown that jurisdiction is unreasonable. That's a principle set out in the Sinatra v. National Inquirer decision. So I don't think we even get to that factor here. But if we do, it's reasonable only in the sense that it's their home state and every out-of-state defendant can say that in any out-of-state tort situation. So we don't think it should weigh heavily in this situation. Thank you, counsel. Thank you, your honors. Restream Aircraft Limited v. Arrow Law Group will be submitted and this court will stand in recess for approximately five minutes at this point before we take up our final two cases. Thank you very much.
judges: Wardlaw, Nguyen, Oliver